NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALEXANDER GREEN, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 04-5824 (JAP) |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | **OPINION** |

APPEARANCES:

Abraham S. Alter, Esq.
James Langton, Esq.
Langton & Alter, Esq.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065
    Attorneys for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
Sheena V. Barr, Esq.
Special Assistant United States Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza
Room 3904
New York, New York 10278
    Attorneys for Defendant

PISANO, District Judge.

Before the Court is Plaintiff Alexander Green's appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. The Court has jurisdiction to review this matter under 42 U.S.C. § 1383(c)(3) and decides this matter without oral argument, *see* Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was able to engage in substantial gainful activity and therefore was not disabled. Accordingly, the Court affirms.

**I.     Background**

**A.     Procedural History**

Plaintiff unsuccessfully filed three applications for Social Security benefits between 1995 and 2000, claiming a range of disabilities.[1] These first three applications were denied and Plaintiff made no appeals. On June 17, 2002, Plaintiff filed another application for SSI, alleging an inability to work effective September 1, 1999 due to chronic obstructive pulmonary disease ("COPD") and back pain. The Social Security Administration denied Plaintiff's claim. Plaintiff appealed the June 17, 2002 decision and, upon reconsideration, the application was again denied.

At Plaintiff's request, a hearing was held before Administrative Law Judge Richard L. Steno ("ALJ") on August 21, 2003. The ALJ denied Plaintiff's application in a decision issued

---

[1] Plaintiff listed tuberculosis as his disabling condition on the September 15, 1995 application for SSI. On the application dated March 20, 1997, Plaintiff listed bronchitis, asthma, tuberculosis and severe sinus pain as his disabling conditions. On the application dated August 17, 2000, Plaintiff listed asthma, bronchitis, emphysema and tuberculosis as his disabling conditions.

2

on October 14, 2003.  Plaintiff filed an appeal with the Social Security Appeals Council, which reviewed the matter and concluded on September 24, 2004 that there were no grounds for review. The ALJ's ruling became the Commissioner's final decision.  Plaintiff filed this action challenging the final decision on November 24, 2004.

**B.      Factual History**

      **1.      Plaintiff's Employment Prior to September 1, 1999**

On August 21, 2003 Plaintiff testified in a hearing held before the ALJ that he had not worked since about 1992.  Prior to 1992, he worked for a year and a half as a water inspector for Jersey City Water Inspection.  Plaintiff claimed during his testimony that his job as a water inspector required him to drive from job to job to find leaks inside of buildings, open and read water meters, and inspect pipe breaks.  Plaintiff claimed that he was on his feet or driving for most of the day, and he sometimes had to carry pipes and tools ranging from approximately forty to one hundred pounds.  Approximately three to seven times per month, Plaintiff's job required him to use a jackhammer.

Prior to becoming a water inspector, Plaintiff held several different jobs including jobs in broadcasting and recording, telemarketing, and working for the Jersey City Welfare Department. Additionally, the record shows that Plaintiff performed odd jobs working for temporary agencies such as Labor Ready moving furniture for up to fourteen hours per day and lifting up to one hundred pounds or more as late as March of 2000.

      **2.      Plaintiff's Daily Activities**

Plaintiff is a fifty-year old male with a college education.  He lives alone in an apartment in Jersey City.  Every morning he wakes up and performs certain therapeutic exercises in order to

get out of bed.  He occasionally cleans the house, but Plaintiff claims that he sometimes has difficulty lifting the toilet seat.  He volunteers up to twice a week.  Plaintiff rides his bike to run errands and visit the doctor, but claims that he can walk no more than three-quarters of a block before tiring.  Plaintiff used to enjoy playing basketball but claims he can no longer do so due to his chronic pain and asthma.  He smokes three to five cigarettes per day.  Plaintiff's smoking is down from two packs per day two or three years ago.

### 3. Plaintiff's Medical History

The record indicates that Plaintiff has a history of ailments prior to his alleged disability onset date of September 1, 1999.  He suffered from tuberculosis for several years as a child and has a family history of asthma.  He has been on various asthma and allergy medications for most of his life.  During testimony on August 21, 2003, Plaintiff claimed to have been hit by a car on his bicycle twice within a nine month period during 1988, causing him knee pain.   Plaintiff also underwent sinus surgery in 1991 to correct a septal deviation.

In September 1995, Plaintiff visited the Hudson County Chest Clinic where he underwent a chest x-ray.  Some fibrotic changes were noted in his right lung, without any other remarkable ailments.  No medications were prescribed.  In October 1995, he visited Jersey City Medical Center complaining of chest pains and requesting a test for asbestos.[2]  In December 1996, Plaintiff again visited Jersey City Medical Center complaining of fever, productive cough and chills.  He was discharged with instructions for treatment of a sore throat.  Plaintiff also claimed to have visited a psychiatrist once in the late 1990s without diagnosis or treatment.

---

[2] The result of the test was not recorded.

Between 1997 and 2002, Plaintiff visited at least five other physicians for various ailments and/or disability evaluations. They made the following observations:

### a. Dr. Reyad Mohsen

On June 27, 1997, Dr. Reyad Mohsen of Disability Determination Services ("DDS") performed a consultative exam on Plaintiff pursuant to Plaintiff's March 20, 1997 application for SSI benefits. Plaintiff reported having three to four asthma attacks per week but never required hospital admission or intubation. He reported being allergic to dust, animal hair, and pollens for which he took Claritin daily. Plaintiff admitted to smoking one half pack of cigarettes per day. Dr. Mohsen noted a family history of asthma, hypertension, diabetes, and brain tumors. He diagnosed Plaintiff with hypertension requiring treatment and mild bronchial asthma that did not require treatment. His diagnosis subsequently resulted in a denial of SSI benefits.

### b. Dr. Victor Marchione

Dr. Marchione first evaluated Plaintiff on November 11, 1998 for complaints of post-nasal drip, coughing, wheezing, weight loss and loss of sleep. Dr. Marchione diagnosed Plaintiff with COPD, asthma and allergies. He prescribed Zyban, Nicotrol, and Claritin. Dr. Marchione also advised Plaintiff to quit smoking.

Dr. Marchione evaluated Plaintiff again on or around July 19, 1999. This time Plaintiff reported feeling generally ill with dizziness and cravings for tobacco. Dr. Marchione mentioned in his notes that Plaintiff walked well. He asked Plaintiff about his family medical history. Dr. Marchione again suggested that Plaintiff quit smoking. He prescribed Flonase and renewed Plaintiff's prescriptions for Nicotrol and Claritin.

Plaintiff visited Dr. Marchione two more times in 1999, and then again on January 31, 2000,[3] complaining of coughing, wheezing, sore throat and sweating. Dr. Marchione concluded that these symptoms were likely a reaction to the Zyban. He prescribed Claritin, Singulair, and Serevent. However, in addition to his pre-existing conditions, pulmonary function tests performed on Plaintiff at the request of Dr. Marchione also revealed "volume loss in the upper lobe of his lungs with probable atelectatic changes[4] as well as hyper-expanded lung fields." Subsequent visits to Dr. Marchione took place at the Institute for Better Breathing ("Institute") in Jersey City, New Jersey. On February 7, 2001, Plaintiff visited the Institute where Dr. Marchione diagnosed him with bronchitis, COPD and asthma. He was placed on antibiotics and instructed to continue taking his other prescriptions. On May 10, 2001 Plaintiff visited the Institute again complaining of coughing, wheezing, and green and yellow phlegm. In addition to his other prescriptions, Dr. Marchione prescribed Advair for Plaintiff.

Dr. Marchione performed a series of diagnostic tests on Plaintiff following a physical assessment on August 27, 2001. Plaintiff complained of coughing; wheezing; yellow, green and white phlegm; chills; fever; sweats; headache; and diarrhea. He had also recently lost approximately fourteen pounds.[5] At that time, tests again revealed hyper-expanded lung fields,

---

[3] On January 7, 2000, Plaintiff consented to participation in a clinical study conducted by Dr. Marchione for Genomics Collaborative, Inc. Participation involved donating blood samples for use in research studies to "find genes that may be involved in diseases like diabetes, asthma, heart disease, arthritis, cancer and osteoporosis," as well as contributing blood samples to a repository of human DNA.

[4] Atelectasis is the collapse of part or all of a lung due generally to the blockage of air passages. *See* The Mayo Clinic, *Atelectasis*, 2005, *available at* http://www.mayoclinic.com/health/atelectasis/AN00775.

[5] The record indicates that Plaintiff re-gained the lost weight by January 2002.

suggesting some degree of emphysematous change.  Volume loss in the upper lobe of his lung with possible underlying atelectasis, or bronchiectasis, and minimal obstructive airways disease were also observed.  Dr. Marchione prescribed Augmenten in addition to all previously prescribed medicines.

Plaintiff visited Dr. Marchione for the final time on December 16, 2002 to obtain a Department of Human Services Examining Physicians Report.  Dr. Marchione reported that from November 11, 1998, Plaintiff suffered from chronic bronchitis, an inguinal hernia and COPD, with symptoms that included shortness of breath and fatigue on minimal exertion.  He reported that Plaintiff's condition was a progressive disease and categorized his degree of incapacity as ambulatory.  He opined that for a period of at least six months, Plaintiff was incapable of standing, walking, climbing, stooping, bending or lifting.  Dr. Marchione advised Plaintiff to perform no work.

### c.  Dr. Nikola Vernese

On August 10, 2000, Plaintiff visited Greenville Hospital in Jersey City complaining of pain and swelling in the right groin.  He was diagnosed by Dr. Vernese with a right inguinal hernia and admitted for surgery the next day.  On August 11, 2000 Dr. Vernese repaired the right inguinal hernia and noted that Plaintiff tolerated the procedure without distress.  Dr. Vernese subsequently released Plaintiff without complication.

### d.  Dr. Francky Merlin

On September 13, 2000, Dr. Merlin physically examined Plaintiff for the DDS.  Plaintiff complained of severe asthma and arthritis in the left hip and knee.  In his report, Dr. Merlin noted weight loss in Plaintiff, but observed that overall he appeared well-nourished.  Plaintiff's lungs

were free of wheezing, rales or ronchi and he had no difficulty getting up from a seated position or getting on and off the examining table. Dr. Merlin observed that Plaintiff had full use of both hands and arms, unimpaired grasping strength and manipulative functions, no joint pain, swelling, or warmth, and full range of motion for all joints and extremities. Pulmonary function tests were also normal. Dr. Merlin's final diagnosis for Plaintiff was asthma and post bilateral inguinal herniorrhaphy, both stable, and opined that Plaintiff was capable of sitting, standing, walking, handling objects, hearing, speaking, traveling, lifting, and carrying.

### e. Dr. Michael Pollack

On September 9, 2002, Dr. Pollack physically examined Plaintiff for the DDS. This time, Plaintiff complained of "back pain of three years' duration" and "emphysema of 41 years' duration."[6] In his report, Dr. Pollack noted that Plaintiff appeared well-nourished and well-developed. Plaintiff's lungs were free of wheezing, rales or ronchi and he had no difficulty getting up from a seated position or getting on and off the examining table. Dr. Pollack noted that Plaintiff had full use of both hands and arms, unimpaired grasping strength and manipulative functions, no joint pain, swelling, or warmth and full range of motion for all joints and extremities. Pulmonary function tests were normal.

Dr. Pollack's final diagnosis was chronic low back pain and COPD with a fair prognosis. At that time, Dr. Pollack determined that Plaintiff's condition was moderate with a residual functional capacity for "medium" work. He also concluded that Plaintiff should not be exposed to pulmonary irritants.

---

[6] There was also mention of a 1998 "heart attack" which allegedly took place during a basketball game. However, there is no medical evidence on record of such incident.

**II.     Standard of Review**

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g); § 1383(c)(3) ("The final determination of the Commissioner of Social Security. . . shall be subject to judicial review as provided in section 405(g). . ."); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

Some types of evidence will not be "substantial."  For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)

(internal citation omitted))).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams*, 970 F.2d at 1182.

**A.**      **The Record Must Provide Objective Medical Evidence**

Under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, a claimant is required to provide objective medical evidence in order to prove his disability.  42 U.S.C. § 1382c(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of sections. . . 42 U.S.C. § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.");  42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques [] must be considered in reaching a conclusion as to whether the individual is under a disability.").

Accordingly, a Plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability"). He must provide medical findings that show that he has a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect. . . [one's] ability to do basic work unless 'medical signs' or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

B.      **The Five-Step Analysis for Determining Disability**

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists. *See* 20 C.F.R. § 416.920.[7] For the first two steps, the claimant must establish

---

[7] The regulations implementing the standard for obtaining disability insurance benefits, 42 U.S.C. § 401 *et seq.*, and those implementing the standard for supplemental security income, 42 U.S.C. § 1381 *et seq.* are the same in all relevant respects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

11

(1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(b)-(c). If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the Social Security Regulations ("Listing of Impairments"). *See* 20 C.F.R. § 416.920(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If he cannot so demonstrate, the analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") sufficiently permits him to resume his previous employment. *See* 20 C.F.R. § 416.920(e). RFC is defined as that which an individual is still able to do "despite limitations caused by his or her impairments." 20 C.F.R. § 416.945(a). If the claimant is found to have the RFC to meet the physical and mental demands of his past work, he is not disabled. In the event that the claimant is unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(f). If the Commissioner cannot satisfy this burden, the claimant shall receive SSI.

### III.    The ALJ's Decision

After reviewing the available evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff did not qualify to receive SSI. The ALJ made the following findings:

The ALJ determined that Plaintiff met step one of the analysis because he had not engaged in substantial gainful activity at least since the application date of June 17, 2002. At step two, the ALJ found that Plaintiff's pulmonary disease constituted a "severe" impairment within the meaning of the Regulations; however, he determined that Plaintiff's alleged back pain and depression were not "severe." *See* 20 C.F.R. § 416.920(c). The ALJ concluded that Plaintiff did not meet the requirements of step three because his alleged pulmonary disease did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Plaintiff does not dispute the ALJ's findings at steps one, two or three.

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's RFC sufficiently permits him to resume his previous employment. *See* 20 C.F.R. § 416.945(a). First, the ALJ noted that he carefully compared Plaintiff's subjective complaints to all of the various medical opinions provided in the record. *See* 20 C.F.R. § 416.929. In doing so, ALJ gave careful consideration to such matters as: (1) the nature, location, onset, duration, frequency, radiation and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record.

The ALJ determined that, while Plaintiff's assertions of disabling pulmonary disease were reasonable to a degree, the objective medical evidence did not support them to the debilitating extent asserted by Plaintiff. In support of his finding, the ALJ noted that treatment for Plaintiff's coughs never involved more than antibiotics, regular inhalers, and asthma medications. Nor could he find any history of intubation or hospitalization due to pulmonary

13

malfunction. The ALJ considered the results of pulmonary tests and chest x-rays taken by Plaintiff's various physicians and observed that they were only indicative of mild disease and some emphysematous changes. Furthermore, Plaintiff's pulmonary functionality tests were consistently normal. Finally, the ALJ cited to Plaintiff's testimony, wherein he stated that he was able to ride a bicycle; move furniture; and smoke up to five cigarettes per day, despite doctors repeatedly advising him to quit.

The ALJ found that the objective medical evidence and Plaintiff's testimony of daily living failed to establish impairments which precluded him from engaging in his former job as a water inspector. He specifically determined that Plaintiff could lift up to fifty pounds and frequently lift up to twenty-five pounds. Further, the ALJ found that Plaintiff could stand, walk, and sit for up to six hours. Given Plaintiff's abilities, the ALJ held that Plaintiff was capable of performing "medium" work, free from exposure to excessive pulmonary irritants, and Plaintiff therefore retains the RFC to perform his past relevant work as a water inspector because it requires an RFC of only "light" work.

In his opinion, the ALJ noted the following during step four of the analysis:

> The evidence in this case establishes that the claimant has past relevant work as a water inspector. Based upon the determined residual functional capacity [of "medium" work], I find that the claimant could perform this job as it is generally performed in the national economy, pursuant to the Dictionary of Occupational Titles, section 209.567-010, Meter Reader, and Waterworks. Although the claimant did some additional physical work in his job, beyond this job description, involving breaking of ground with a jackhammer at times, that aspect of the job was minimal by his own testimony, and the great majority of the time was spent performing the tasks of the job as the job is generally performed in the national economy. Section 209.567-010 indicates that the job requires a "light" level of exertion, which is within the claimant's residual functional capacity. Also, there is no reason to believe that the job involves exposure to excessive pulmonary irritants.

> Accordingly, I conclude that the claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920 (e)).

Based on his finding at step four, the ALJ did not reach step five of the analysis.

### IV.    Legal Discussion

Plaintiff now challenges the ALJ's decision at step four.  He claims that the ALJ's decision is not supported by substantial evidence of record for the following reasons:

1. The ALJ's failed to articulate evidentiary foundation for his finding that Plaintiff could meet the exertional demands of "medium" work;

2. The ALJ failed to comply with the Commissioner's requirement for a "function by function" analysis of Plaintiff's past relevant work as a water inspector.

Therefore, the Court must evaluate whether the ALJ's decision that Plaintiff's RFC permits him to resume his previous employment as a water inspector is supported by substantial evidence.

### A.    Evidentiary Foundation for ALJ's Conclusion that Plaintiff can Perform "Medium" Work

Plaintiff argues that the ALJ failed to provide evidentiary foundation for his assessment that Plaintiff could perform "medium" work.  Specifically, Plaintiff claims that the ALJ failed to explain his rejection of (1) the DDS's finding that Plaintiff could not be exposed to any fumes, pollutants or other irritants; and (2) Dr. Marchione's finding that as of December 16, 2002, Plaintiff was incapable of performing any work for a period of at least six months.  In support of his claim that the ALJ failed to explain his rejections, Plaintiff cites the "*Cotter* Doctrine," which states:

> We need from the ALJ not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication the reviewing Court cannot tell if significant probative evidence was not credited or simply ignored.

*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

First, Plaintiff argues that the ALJ failed to explain why he rejected the conclusion of Dr. Pollack, from DDS, that Plaintiff should avoid exposure to any fumes, pollutants or other irritants. A review of the ALJ's decision indicates that in rejecting this finding, the ALJ pointed out that Plaintiff's pulmonary function routinely yielded normal results and that he has never had an asthma attack serious enough to warrant treatment besides an inhaler.

The ALJ also considered Plaintiff's admission to smoking three to five cigarettes per day, despite having been instructed to quit by his doctors. The ALJ felt that continuing to smoke involved voluntary exposure to stronger pulmonary pollutants and irritants than those he would encounter in the workplace. Contrary to Plaintiff's assertions, the ALJ was justified in placing weight on Plaintiff's failure to follow his doctors' instruction to quit smoking. *Cf.* 20 C.F.R. § 416.930(b) ("If you do not follow prescribed treatment without a good reason, we will not find you disabled . . . ."). Thus, the ALJ found that Plaintiff should avoid exposure to excessive pulmonary irritants, not avoid exposure to all pulmonary irritants. Based on the foregoing, the Court finds that the ALJ sufficiently explained his rejection of this evidence and thus, that remand is not warranted on this ground.

Second, Plaintiff argues that the ALJ failed to explain why he rejected the RFC assessment of "no work" for a period of at least six months by Dr. Marchione, one of Plaintiff's treating physicians. A review of the ALJ's decision indicates that he sufficiently explained the

16

rejection of this opinion.  The ALJ states in relevant part "no significant weight is accorded to the assessment of "no work" on the Examining Physician's Report from New Jersey Welfare . . . . This report is essentially a scratch sheet of little probative value and is not supported by the objective medical evidence."   Further, the ALJ appropriately notes that the applicable regulations expressly reserve to the Commissioner the decision as what an individual's RFC is.  See 20 C.F.R. § 416.927(e).  Social Security Ruling 96-5p makes clear that although the ALJ must consider medical opinions on any issue, including issues reserved to the Commissioner, the ALJ is not required to give a physician's opinion as to what an individual's RFC is any controlling weight or special significance.  See S.S.R. 96-5p, 1996 WL 374183 (July 2, 1996); see also Smith v. Comm'r of Social Security, No. 05-3533, 2006 WL 1140128, at *5 (3d Cir. Apr. 21, 2006) (stating that the Administrative Law Judge was not required to accept treating physician's opinion that claimant was disabled because this is an ultimate issue reserved to the Commissioner); Frazier v. Apfel, No. 99-715, 2000 WL 288246, at *8 (E.D. Pa. Mar. 7, 2000) (affirming Administrative Law Judge's decision not to afford great weight to treating physician's opinion on claimant's residual functional capacity).

     The ALJ specifically considered Dr. Marchione's assessment of "no work," an issue reserved to the Commissioner, and found that it was not supported by Plaintiff's testimony of daily living and the objective medical evidence.  During his August 31, 2003 testimony, Plaintiff reported having very infrequent asthma attacks, none of which required physician intervention.  He also admitted to taking daily bicycle rides and moving furniture around his apartment, which the ALJ saw as requiring an RFC for more than just "light" work.

In addition, the DDS categorized Plaintiff as appearing to be fairly healthy and capable of performing work. Specifically, both Drs. Merlin and Pollack noted that Plaintiff's lungs were free of wheezing, rales or ronchi; that pulmonary function tests were normal; and that Plaintiff had no difficulty getting up from a seated position or getting on and off the examining table. Dr. Merlin further observed that Plaintiff had full use of both hands and arms, unimpaired grasping strength and manipulative functions, no joint pain, swelling, or warmth, and full range of motion for all joints and extremities. He concluded that Plaintiff was capable of sitting, standing, walking, handling objects, hearing, speaking, traveling, lifting, and carrying. Dr. Pollack, in specifically concluding that Plaintiff could perform "medium work," made similar findings.

Therefore, based on the foregoing, the Court finds that the ALJ sufficiently explained his rejection of Dr. Marchione's "no work" assessment. Accordingly, the Court declines to remand this matter on this ground.

**B.      The ALJ's "Function by Function" Analysis of Past Relevant Work**

Plaintiff argues that the ALJ failed to comply with the Commissioner's requirement for a "function by function" analysis of his past relevant work. Plaintiff specifically claims in this regard that instead of basing his analysis on Plaintiff's actual past work, the ALJ relied on the description of a meter reader in the *Dictionary of Occupational Titles,* Section 209.567-010. Thus, according to Plaintiff, the ALJ "sent Plaintiff to 'resume' a job that he never had" by viewing Plaintiff as a clerical meter reader instead of a water inspector.

The Court finds that the ALJ completed the required "function by function" analysis. The regulations require the ALJ to describe an individual's RFC in terms of specific work limitations on a "function by function" basis. 20 C.F.R. § 416.945. The ALJ found that Plaintiff has the

18

RFC of medium work because he could lift up to fifty pounds; frequently lift up to twenty-five pounds; push and pull arm and leg controls; and sit, stand and walk for six hours out of an eight hour workday.

After determining Plaintiff's RFC, the ALJ was required to determine whether, given his RFC, Plaintiff could return to his past relevant work.  See 20 C.F.R. §416.920.  Social Security Ruling 82-61 specifically states that in making this determination, a claimant will be found to be "not disabled" if he retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  See S.S.R. 82-61, 1982 WL 31387 (1982).

The Court finds that the ALJ conducted the proper analysis.  Plaintiff described his former job as requiring him to look for leaks, read water meters, break pipes, turn the water off, and drive from job to job for most of the workday.  Sometimes, Plaintiff had to carry pipes and tools ranging from approximately forty to one hundred pounds.  Given these additional physical tasks, which the ALJ noted were minimal, the ALJ concluded that although Plaintiff may not be able to return to his particular former job, he can perform the job of a meter reader as such is performed in the national economy.

Relying on the *Dictionary of Occupational Titles*, the ALJ noted that the job of a meter reader as set forth in section 209.567-010 was consistent with Plaintiff's testimony of his general job duties, such as reading water meters, looking for leaks, driving from job to job.  According to section 209.567-010, this job required a light level of exertion and did not entail exposure to excessive pulmonary irritants.  Thus, this past relevant work was within Plaintiff's RFC of

medium work. The ALJ was clearly entitled to rely on the *Dictionary of Occupational Titles*. See S.S.R. 82-61, 1982 WL 31387 (1982) ("The *Dictionary of Occupational Titles* (DOT) descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is *usually* performed in the national economy."). Further, based on the applicable regulations, the ALJ did not err by placing Plaintiff in a "job he never had" because he was entitled to consider, in step four of his analysis, whether Plaintiff could perform not only his particular past job, but the functional demands of that job as it is performed in the national economy. See S.S.R. 82-61, 1982 WL 31387 (1982); see also Perez v. Comm'r of Social Security, No. 03-3597, 96 Fed. Appx. 805, 2004 WL 835976, at *1 (3d Cir. Apr. 19, 2004) (stating that the "ALJ was entitled to consider whether [claimant] could perform the job as it is customarily performed in the national economy . . . and to take into account the Department of Labor's *Dictionary of Occupational Titles* . . . ."). Therefore, the Court declines to remand on this basis.

## V.     Conclusion

In conclusion, the Court finds that for the above reasons, the Commissioner's decision is supported by substantial evidence and accordingly, is affirmed. An appropriate order accompanies this opinion.

Dated: August 28, 2006 /s/ JOEL A. PISANO
United States District Judge

Original: Clerk
cc: Judge Hughes
All Parties
File